Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7078 | **DATE** | 9/13/2000 |
| **CASE TITLE** | STEVE NEWTON, JR. vs. CHICAGO SCHOOL REFORM BOARD,etc.,et | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendants' motions for summary judgment are granted in part and denied in part [169-1],[170-1] &[171-1] and plaintiff's motion for summary judgment is denied [175-1]. The parties motions to strike are denied in part and granted in part [178-1], [179-1]&[180-1].

Status hearing set for 10/4/00 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

TBK

courtroom deputy's initials

number of notices

SEP 15 2000
date docketed

docketing deputy initials

date mailed notice

Document Number

191

ED-7
FILED FOR DOCKETING
00 SEP 14 PM 3: 23

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEP 15 2000

| | | |
|---|---|---|
| STEVE NEWTON, JR. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 96 C 7078 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| CHICAGO SCHOOL REFORM BOARD OF | ) | |
| TRUSTEES, PAUL G. VALLAS, | ) | |
| individually and in his official capacity | ) | |
| as Chief Executive Officer of Chicago Public | ) | |
| School, LYNN ST. JAMES, individually and | ) | |
| in her official capacity as Chief Education | ) | |
| Officer of Chicago Public Schools, | ) | |
| PATRICIA A. HARVEY, individually and in | ) | |
| her official capacity as Chief Accountability | ) | |
| Officer of Chicago Public Schools, | ) | |
| James Deanes, A.G. Willis, Shawn walker, | ) | |
| Faye Terrell Perkins, and Donald R. Pittman | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending are defendants' motions for summary judgment pursuant to Fed. R. Civ. Proc. 56 and plaintiff's partial motion for summary judgment. In addition, both parties have filed motions to strike each others Local Rule 56 statements. For the reasons set forth below defendants' motions for summary judgment are granted in part and denied in part (##169-1, 170-1, 171-1) and plaintiff's partial motion for summary judgment is denied (#175-1). The motions to strike are granted in part and denied in part (##178-1, 179-1, 180-1).

## BACKGROUND FACTS

On January 12, 1994, the John Marshall Local School Council ("LSC") entered into a four (4) year performance contract with plaintiff Steve Newton, Jr. to be the principal of Marshall High School ("Marshall"), commencing July 1, 1994, and ending June 30, 1998. The face of the 1994-1998 Uniform Principal Contract identifies Plaintiff, the Marshall LSC as agent, and the Board as parties to the contract.

Between August 1993-November 1996, students, parents, teachers and members of the Marshall LSC expressed concerns about the creation and implementation of Marshall's school improvement plan. Questions had been raised about student and employee discipline and how to raise achievement tests scores at Marshall.

In 1995, CEO Vallas appointed Patricia Harvey, Chief Accountability Officer. The Office of Accountability is an outgrowth of the 1995 Amendatory Act to the Illinois School Code, which mandates that the Trustees ensure ongoing academic improvement through the establishment of an Academic Accountability Council and a strong school improvement and recognition process. Its specific mission is to implement a comprehensive system of review, evaluation, and analysis of school performance, and to provide a system of intervention for non-performing schools.

On or about September 9, 1996, Deputy Director of Safety and Security Nathalia Walker, who oversees the security in the schools and central office, received a telephone call from the Region 3 Security Supervisor regarding security concerns at Marshall. Over the next four weeks Walker received similar complaints about the conduct of Marshal security staff. Walker then

discussed these concerns with the Director of Safety and Security, George Ruckrich. Ruckrich requested Walker to direct the Region 3 Security Supervisor to make regular visits to the school and to keep them apprized of security issues at Marshall.

On October 1, 1996, CEO Paul Vallas ("Vallas") placed 109 failing schools on probation, including Marshall High School, pursuant to the Illinois School Code, 105 ILCS 5/34-8.3. Vallas is charged with the day-to-day management of the Chicago Public School system. The general superintendent has the authority to monitor the performance of attendance centers, to identify and place an attendance center on remediation and probation, and to recommend to the board that the attendance center be placed on intervention and reconstituted subject to the provision of Sections 34-8.3 and 8.4.

On or about October 3, 1996 approximately 100-200 people from Marshall arrived at the Central Administration Office and demanded they meet with Vallas. During the course of the meeting serious concerns about the lack of educational activity and meaningful educational instruction at Marshall were raised. After the meeting Vallas directed Harvey to immediately dispatch an Interim Probation Team to investigate the allegations and, if necessary, to immediately develop a corrective action plan.

Probation is designed to determine what specific steps a school should take in order to help its students increase their level of achievement. As a result, all schools placed on probation undergo a comprehensive academic and financial evaluation by an Interim Probation Team from the Board's Office of Accountability to determine what the strengths and weaknesses of the school are and how to remedy the deficiencies. Once a school is placed on probation, a corrective action plan is developed to address deficiencies within the school. The corrective action plan

3

may also include assistance which may require using the school discretionary funds or any other school funds. Schools placed on probation that, after a maximum of one year, fail to make adequate progress in correcting deficiencies are subject to the following action by the general superintendent with the approval of the board, after opportunity for a hearing...(2) Removing and replacing the principal. 105 ILCS5/34-8.3(d). Schools remain on probation until deficiencies are corrected, even if such schools make acceptable annual progress. 105 ILCS 5/34-8.3(e).

The Interim Probations Team sent to Marshall was given four directives which were: (1) address the prevalent lack of textbooks for students; (2) curtail deployment of security personnel who had not been hired or screened through the prescribed process; (3) decrease the significant number of teaching vacancies being filled with uncertified teachers and filling those vacancies with certificated teachers: and (4) alleviate unnecessary curtailment of student instructional time based on mass detention of tardy students.

On October 4, 1996 Harvey met with plaintiff, Marshall High School staff and LSC members to explain the probation process and informed them that an Interim Probation Team would be arriving at Marshall on October 7, 1996 to begin its assessment. Plaintiff never raised the issue of his authority vis-a-vis the Interim Probation Team to either Harvey or the Probation Manager, Donald Pittman.

Plaintiff was given a packet of information that explained the evaluation process. After arriving at Marshall, the Interim Probation Team learned the following: (1) that some seniors were not able to enroll in classes required to graduate; (2) there was a substantial lack of student textbooks and instructional materials for teachers; (3) hundreds of students were being detained for tardiness in lunchroom for a period of up to 45 minutes with no instruction taking place;

4

(4) many classrooms were devoid of students while others had a maximum of 8-10 students;
(5) in numerous classrooms students and teachers were not engaged in substantial educational activities; (6) there was no master teacher rooster; and (7) there was a lack of safety and security plan for students. It was further noted that a hostile relationship between the school staff and Steve Newton existed.

For one week after the Probation team arrived at Marshall, plaintiff dismissed Marshall students at 1:00 p.m. instead of the regular scheduled dismissal time of 2:30. The authority of the principal includes the authority to direct the hours during which the attendance center shall be open and available for use provided the use complies with board rules and policies, to determine when and what operations shall be conducted within those hours, and to schedule staff within those hours. 105 ILCS 5/34-8.1. This early dismissal was for the purpose of conducting in service training for compliance with the requisites of probation. Plaintiff used the early dismissal to meet with staff to discourage them from cooperating with the Interim Probation Team.

On October 9, 1996, plaintiff held a press conference at Marshall at 9:30 a.m. in which he criticized the Interim Probation Team's activities. On October 10, 1996 the Interim Probation Team created an organizational chart which was given to plaintiff. On October 11th plaintiff instructed the Marshall faculty to disregard the organizational chart prepared by the Team. It is undisputed that the Interim Probation Team never asked plaintiff to do something that violated general school policies. Plaintiff believed that the Interim Probation Team on two occasions asked him to do something that he felt was not in the best interest of Marshall's educational program. One occasion involved the proposed reassignment of an administrator back to an administrative position from a teaching position.

5

The Interim Probation Team and Harvey offered plaintiff assistance in developing a tardiness policy, providing training for security staff, staffing vacancies with certified teachers, and creating an organizational structure. Plaintiff refused Harvey's and the Interim Probation Team's offer of assistance.

The faculty at Marshall expressed frustration and confusion to the Interim Probation Team over plaintiff's actions. Plaintiff had reassigned teachers at Marshall who cooperated with the Interim Probation Team to unfavorable assignments and continued to refuse to cooperate with Harvey and the Interim Probation Team. Harvey then advised Vallas that based on the team assessment, that there was sufficient basis for the CEO to convene a hearing to determine whether Marshall should be declared in educational crisis. Harvey and the Interim Probation Team advised Vallas that plaintiff's temporary reassignment from Marshall was imperative in order to immediately effect critical time-sensitive intervention and to accomplish a thorough and complete assessment of the school.

On October 21, 1996 Walker visited Marshall upon her own initiative to conduct a walk-through as a result of the security complaints. Upon Walker's arrival a school security officer notified plaintiff of Walker's presence. Plaintiff appeared and escorted Walker to the school's patrol office. In response to Walker's statement that she was there to determine whether there were any security issues that needed to be addressed at Marshall, plaintiff responded that there were no security issues that needed to be addressed. Plaintiff then escorted Walker to the school exit and she left the building.

On October 25, 1996 CEO Vallas temporarily reassigned plaintiff from Marshall to the Board's Central Office, pursuant to Board Rule 4-52, because of plaintiff's failure and refusal to

6

cooperate with the Interim Probation Team. On this same day Walker served plaintiff with Vallas' letter. Plaintiff then requested time to remove his belongings, which he was permitted to do. Walker then escorted plaintiff out of the building.

On Monday October 28, 1996 plaintiff returned to Marshall and did not report to the Central Office. Plaintiff did not give Vallas notice that he would not be appearing at the Central Office. Walker was notified by the Region 3 Office of Safety and Security that plaintiff had returned to Marshall. Walker returned to Marshall and inquired of plaintiff why he had returned to Marshall. Plaintiff then told the Interim Probation Team that their business at Marshall was complete and ordered the team to leave the building. Walker and the members of the Interim Probation team advised Vallas of plaintiff's conduct by telephone and requested his assistance. Vallas telephoned plaintiff and reiterated his directive that plaintiff should report to the Central Office. Approximately, midday, plaintiff and his attorney appeared at Central Office and met with Vallas and others. Plaintiff voluntarily chose not to speak during the meeting. Vallas reiterated his request that plaintiff report to the Central Office. Vallas informed plaintiff that his reassignment was temporary and not permanent and that plaintiff should not return to Marshall during the reassignment.

Approximately one hour after plaintiff left CEO Vallas' office plaintiff returned to Marshall. At Vallas' request, the Board's attorney advised plaintiff by letter, dated October 28, 1996 that plaintiff must leave the school and report to Central. Plaintiff again refused to leave. Vallas then directed Walker to order plaintiff to leave. Plaintiff was ultimately removed by police and charged with criminal trespass to property. The Circuit Court of Cook County ruled in plaintiff's favor on this charge and this ruling was upheld on appeal. Plaintiff continued to

7

receive the same pay and benefits he would have received if he had been actively functioning as principal of Marshall until his permanent removal on December 17, 1996.

On October 29, 1996, the Board appointed Frederick H. Bates, a private attorney, to serve as hearing officer at the educational crisis hearing. On October 31, 1996 CEO Vallas sent written notice to all of the appropriate parties of his intent to convene a public hearing to determine whether an educational crisis existed at Marshall. Plaintiff was served with a copy of the notice. The notice explicitly stated that the hearing could result in the taking of immediate corrective action, including removal of the principal, and went into extensive detail regarding the findings of the investigative team, much of which related directly to plaintiff's failures. In response to this notice plaintiff directed a memo to all his staff members setting forth the time and place of the hearing as well as the fact that charges had been made against plaintiff and others and if such charges were sustained plaintiff and staff members could be discharged.

On November 8, 1996, a hearing was held for Marshall at the Central Office to receive evidence as to whether Marshall should be declared in educational crisis pursuant to 105 ILCS 5/34-8.3(f). Plaintiff and his attorney prepared a response to the report of the Interim Probation Team's report prior to the hearing. The hearing lasted for approximately 8 hours and oral testimony was received from 44 persons including plaintiff, his attorney, Marshall staff, students, Local Council members, members of the Marshall Community and members of the Interim Probation Team. Plaintiff spoke at the hearing for at least 25 minutes. Plaintiff's attorney also spoke on plaintiff's behalf.

In addition to receiving oral testimony on November 8, 1996 Hearing Officer Bates left the record open until 5:00 p.m. on November 13, 1996 for interested persons to submit any

written statements and/or documentary evidence that they wanted him to consider before making his recommendation to the Board. Hearing Officer Bates received considerable documentary evidence. Hearing Officer Bates found "that the vast majority of the allegations set forth in the Notice of Hearing were supported by the testimony given and documentary evidence received by the Hearing Officer". The hearing produced a recommendation that Marshall be found in educational crisis At the time Marshall was placed on probation less than 3.5% of its 1595 students achieved at the national norms. Marshall also had an attendance rate of 74.6%, a truancy rate of 8.7% and a graduation rate of 32.1%. Educational data collected by the Board indicated that students had higher test scores in surrounding feeder elementary schools but that the students performance declined after they entered Marshall.

Plaintiff never reported to the Central Office. He continued to receive his full pay and benefits as he had when functioning as principal. On December 17, 1996, defendants permanently removed plaintiff, from his post, pursuant to 105 ILCS 5/34-8.3 and Board Policy 95-1220-P02. By letter dated December 26, 1996, plaintiff requested a hearing to contest his permanent removal pursuant to 105 ILCS5/34-85. The Board denied his request because he had been removed pursuant to 105 ILCS 5/34-8.3 and not dismissed pursuant to 105 ILCS 5/34-85. In January of 1998, plaintiff sent the Marshall LSC a letter of application for the position of principal. The Marshall LSC did not respond to his request for consideration. Plaintiff has not applied for any other principal positions.

Plaintiff filed a six-count complaint, and a motion for a temporary restraining order and preliminary injunction in the United States District Court for the Northern District of Illinois against the Board, CEO Vallas, Harvey and individual members of the Interim Probation team

challenging his temporary assignment to the central office on October 25, 1996. Judge Paul Plunkett denied plaintiff's request for injunctive relief and dismissed Counts II-VI without prejudice. On or about March 3, 1997, Judge Plunkett dismissed all of the individual defendants other than CEO Vallas and Harvey, individually, and the Board. On April 11, 1997, plaintiff filed an amended complaint.

In response to defendants' motion to dismiss, Judge Plunkett dismissed with prejudice Counts II, III, IV, VI and the official capacity claim asserted against CEO Vallas in Count V of plaintiff's six-count amended complaint . As a result, the only claims remaining in this case are Count I , the breach of contract claim, and Count V the § 1983 and the Fourteenth Amendment claims against CEO Vallas individually and the Board.

## PLAINTIFF'S MOTIONS TO STRIKE

Before we can reach the merits of the parties summary judgment motions, we must address the parties' motions to strike. Both parties have filed motions to strike each other's Local Rule 56 statements.

Plaintiff has moved to strike 46 of defendants' 212 statements of facts while defendants have moved to strike 141 of plaintiff's responses to defendants' Rule 56.1 statement. We will start with plaintiff's motion. Plaintiff in objections 2, 6, 7, 8, 13, 14, 17, 28 ,35,49, 167, 186 and 192 moves to strike defendants' factual statements which cite to numerous provisions of the School Reform Act and various Board policies. Plaintiff argues that these statements are incomplete statements of the Act which are in effect conclusions of law. Plaintiffs' objections as to the above provisions are overruled. Defendants' reliance on certain sections of the statute does not render these statements conclusions of law. Furthermore, these objections fail to satisfy

10

the requirements of Local Rule 56.1(b)(3)(B) in that any additional sections of the statute which plaintiff relies upon should have been submitted in his statement of additional facts.

Plaintiff moves to strike paragraphs 15, 19, 20, 22 and 24 of defendants Rule 56 statement based upon defendants failure to attach a copy of the Uniform Principal's Performance Contract which was an Exhibit to plaintiff's amended complaint. These objections are overruled in that the exhibit is attached to and incorporated into plaintiff's complaint and the contract was exchanged by the parties during discovery. Furthermore, a copy of the Uniform Principal Contract is included as Exhibit 12 to Defendants' Rule 56.1 statement and the defendants' cite to the provisions of the contract upon which they rely.

Plaintiff moves to strike paragraphs 43, 75, 94, 150, 159, and 165 of defendants' Rule 56.1 statement arguing that the statements made in Vallas' deposition are mere opinion based upon hearsay. These objections are overruled. The statements made by Vallas are under oath and based upon his personal knowledge. As defendants have argued this objection goes to the weight of such statements not to their admissibility. Therefore, plaintiff's motion to strike is denied as to these paragraphs.

Plaintiff moves to strikes numerous paragraphs of Patricia Harvey's affidavit. Plaintiff claims that Harvey's affidavit must be stricken because it constitutes layman's opinion, is hearsay and lacks foundation. The foundational objections are denied because we believe that the affidavit reflects that Harvey had personal knowledge of the statements in her affidavit. To the extent plaintiff disagrees with Harvey's averments, e.g. that plaintiff not only refused her assistance, he failed to order books himself, this goes to the weight of the evidence not the admissibility. As to the hearsay arguments, i.e. "the interim probation team reported to

11

Defendant Harvey that it had uncovered numerous substantive deficiencies, including problems that needed to be resolved immediately so that students would be able to graduate at the end of the 1996-1997 school year" or "[d]uring the October 3, 1996 meeting, the individuals from Marshall made the following complaints"...we also deny the motion. The information reported to Harvey during her investigation is not hearsay as it is offered to show Harvey's state of mind in recommending Marshall's probation. It is offered to explain why Marshall was put on probationary status. Therefore, plaintiff's objections as to defendants' statement of facts 55, 56, 65, 66, 82, 87, 88, 89, 98, and 117 are denied.

Plaintiff raises similar arguments with respect to paragraphs 66, 87, 117 and 150 of defendants' Local Rule 56 statement which all really go to the weight of the statements in the affidavit not the admissibility. Therefore, plaintiff's motion to strike these paragraphs is also denied.

Plaintiff in his motion to strike defendants' statements numbers 71, 73, 74 and 164, puts forth that "plaintiff can neither state the truthfulness or accuracy of the statement because it is hearsay." Plaintiff offers no admission or denial of the facts set forth in the statement and this response violates Local Rule 56.1(b). For example, paragraphs 71, 73 and 74 set forth statements made by Nathalia Walker as supported by her affidavit. They discuss the complaints she received regarding security at Marshall and the directive she received to make regular visits to the school to monitor the security. These statements are not hearsay as they are not offered to prove the truth of the matter asserted. Plaintiff offers no evidence in response to the assertion that there were complaints as to the security at Marshall. Therefore, 71, 73, 74 and 164 are deemed admitted. Plaintiff moves to strike paragraphs 100, 104 and 112 of defendants'

statements of facts arguing that statements made by Pittman is his affidavit are subjective conclusions and lack foundation. Plaintiff also argues that the statement in Pittman's affidavit "that the faculty at Marshall expressed frustration and confusion to the Probation team over plaintiff's actions" is inadmissable hearsay. The hearsay objection is overruled because these statements go the Pittman's state of mind as to the problems at Marshall, the offer of assistance to plaintiff in which Pittman was personally involved and the requests made to plaintiff, i.e. that he provide the master schedule.

Plaintiff's objections to paragraphs 109 and 113 are overruled because 109 cites to deposition testimony and 113 is based upon Pittman's personal knowledge. In objection 121 plaintiff objects to defendants' statement as to CEO Vallas' authority to assign a principal from that principal's school to a temporary assignment. Defendants' cite to Board Rule number 4-52 which is attached as Exhibit 10. Plaintiff argues that this statement should be stricken because it is a legal conclusion and was enacted prior to the Amended Reform Act. Plaintiff's motion to strike is denied. Defendants are entitled to argue the law and cite to relevant authority. We consider this assertion as nothing more than a reference to legal authority to aid the court.

Finally, plaintiff objects to statements # 125 and 146 made in Natalie's Walker's affidavit arguing that the affidavit does not support the statements and they are personal subjective statements. These statements are based upon her personal knowledge as set forth in her affidavit. Therefore, plaintiff's objections are overruled. As to paragraph 52, plaintiff's objections are sustained because it is disputed whether Harvey was a final policymaker.

## DEFENDANTS' MOTION TO STRIKE

Defendants move to strike 143 of plaintiff's responses to defendants' Rule 56.1

statement. With the exception of responses 8, 17, 49, 69, 92, 94, 111, 170, 171, and 200 this motion to strike is granted. In *Malec v. Sanford*, 191 F. R. D. 581 (N.D. Ill. 2000) the Seventh Circuit had occasion to discuss the proper method–according to the Federal Rules of Civil Procedure, the Local Rules, and pertinent case law–for a nonmovant to establish record facts. See *Malec,* at 582-84.

Unfortunately, plaintiff did not conform his responses to defendants' assertions or their presentation of additional facts to *Malec* and its requirements. The document violates every single standard dictated by the Local Rules and case precedent: it presents factual and legal arguments, (e.g. ¶¶17, 19, 26, 28, 34, 35, 41, 42 , 43, 45, 46, 47, 50, 52, 53, 54, 55, 56, 57,60,63,64,65,66,73-76,80,81,82-85,87,88,89,90,92,93,97,98-105,107,109,122, 125, 127,128,129,130,138,140-150,154,155,159,163,164, 169,173,180,185-188,192-193, 202 and 213), it does not cite specific references to supporting evidence, (see, e.g., ¶¶ 2, 6, 11, 21, 22, 28, 34, 36, 41, 42, 43, 46, 50, 54, 55, 56, 57, 60, 63, 64, 65, 66, 67, 68, 71-77, 81-90, 92, 97–107, 109, 111, 112-120, 121,122, 129, 130, 138, 141,142,144,146,153,155,159,160,163,164,166, 167, 168,169-172,183,187,188,190,202,203, 207 and 213 ); is nonresponsive (see,  e.g., ¶¶ 2, 6, 7, 8, 9, 11, 13, 14, 15, 19, 21, 22, 23, 24, 26, 28, 36, 37, 42, 50, 52, 59,60, 63, 64, 65, 66, 67, 68, 69, 71, 72,73-77, 79, 81-90, 92, 93, 96,107,109, 111, 118,119-122,128-130,136, 138, 142,148, 153, 154, 159, 160, 163, 164, 168, 169, 172, 183, 188, 200, 212 and 213; and challenges materiality that should be challenged in memorandum (¶¶50,52,55,56,57,60,63-67,69,71, 73,75,80-85,87-89, 97, 99, 100, 101, 102, 103-105, 107,109, 111-117,121, 122, 125,127,129 and 187).  Therefore, defendants' motion to strike is granted in part and denied in part.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). *Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511.

## DISCUSSION

### A. DUE PROCESS CLAIM

In Count V, plaintiff alleges that his permanent removal as principal of Marshall on December 17, 1996 deprived him of his property interest in his 4 year performance contract at

Marshall without the due process guaranteed him under the fourteenth amendment to the United States Constitution and in violation of 42 U.S.C. § 1983. Plaintiff does not challenge the Board's declaration that Marshall was in educational crisis on December 17, 1996, or the constitutionality of 105 ILCS 5/34-8.3 on its face or as applied to him. Plaintiff challenges the constitutionality of the notice given to him as well as the substance of the hearing. Plaintiff asserts Count V against CEO Vallas individually and the Board. Plaintiff argues that he possessed a property right[1] in his continued employment as principal of Marshall High School and his termination violated 105 ILCS 5/34-85.

In support of Count V plaintiff points out that on January 12, 1994 the Local School Council entered into a four (4) year performance contract with plaintiff to be the principal of Marshall, commencing July 1, 1994 and ending June 30, 1998. On October 25, 1996, Vallas assigned plaintiff to the Office of Schools and Regions. This assignment or removal was allegedly "pending" a final investigation of plaintiff which never took place and consequently defendants acted outside the scope of Board Rule 4-52 and denied him due process. Plaintiff claims that the requirements of due process were not satisfied because he did not receive adequate notice and because the hearing officer was not neutral, witnesses favorable to Newton were not called, there was no opportunity for cross examination, no oath administered and no burden of proof. Plaintiff contends that the hearing pursuant to 105 ILCS 5/34-8.3(d)(3) was a sham, that neither the High School nor its Local School Council were made a party or represented by counsel at this hearing and that only those staff members that testified on behalf

---

[1] Plaintiff in his Memorandum in Opposition to Summary Judgment briefly references a liberty interest right but Count V does not set forth a cause of action for deprivation of a due process liberty interest. It only alleges deprivation of a due process property interest.

of the Board were paid their salaries without penalty. Plaintiff further argues that he was entitled to a hearing pursuant to 105 ILCS 5/34-85.

Property interests are enforceable entitlements to a benefit or right. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), *Lashbrook v. Oerkfitz,* 65 F. 3d , 1339, 1345 (7th Cir. 1995). They can arise directly from state or federal law (as with a statute granting a benefit) or indirectly through the operation of state or federal law on certain conduct. *Id.* at 65 F. 3d at 1345. The Seventh Circuit has recognized that a loss of position that impedes future job opportunities or has other indirect effects on future income can inflict an actionable deprivation of property. *Swick v. City of Chicago,* 11 F. 3d 85, 86 (7th Cir. 1993).

Plaintiff's employment contract and the Illinois School Code, 105 ILCS 5/1-1 et seq. determine the nature of plaintiff's property interest. Taking the facts in a light most favorable to plaintiff it can be concluded that plaintiff had a property interest in his job as principal of Marshall High School because his contract was for a defined term and only permits removal for cause. *Jungels v. Pierce,* 825 F. 2d 1127, 1130 (7th Cir. 1987)

The only due process required was a pre termination hearing. Plaintiff correctly argues that the main announced focus of the hearing conducted on November 8th was as to Marshall pursuant to 105 ILCS 5/34-8.3 and not as to him personally as required by 105 ILCS 5/34-85. The introductory remarks of Hearing Officer Bates support this court's conclusion that the hearing was conducted pursuant to 105 ILCS 5/34-8.3 only. The fact that the focus of the hearing was on Marshall's probationary status does not, as a matter of law, establish a constitutional due process violation on defendants' part.

A public employer who removes an employee from a job in which the employee has a

17

constitutionally protected interest must provide certain limited pre-termination procedures, including at a minimum:(1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Staples v. City of Milwaukee,* 142 F. 3d 383, 385 (7th Cir. 1998). The chosen decision maker must be impartial. *Bakalis v. Golembeski,* 35 F. 3d 318, 323-26 (7th Cir. 1994). Notice is constitutionally adequate if it is reasonable calculated to apprize interested parties of the proceedings and afford them an opportunity to present their objections. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *Hartland Sportsman's Club, Inc. v. Town of Delafield,* 35 F. 3d 1198, 1201 (7th Cir. 1994). An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of action and afford them an opportunity to present their objections.

In the instant case it is undisputed that plaintiff was served with a copy of the Notice of Educational Crisis Hearing on October 31, 1996. The three and a half page notice invited the recipients to provide input at the crisis hearing, explained that the recipients would have an opportunity to address the allegations raised, and in detail set forth the specific reasons why the hearing was being convened. The notice included a copy of the Board Policy governing the declaration of educational crisis.

While Vallas' notice to plaintiff certainly could have been more personalized, the notice

did in fact set forth the problems found at Marshall and many of them involved plaintiff's deficient performance as principal. Due process does not require optimal notice but adequate notice. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Furthermore, plaintiff was well aware of the possibility that he could be fired as principal if the claims against him were sustained at the hearing. This is evidenced in his memorandum to his staff (Vol IV, page #398) where he stated that ... " if the charges are sustained Vallas has the power to discharge me as principal." Moreover, it is undisputed that plaintiff met with Vallas and others from the Board on at least two occasions prior to the hearing. The court finds that the notice given to plaintiff was adequate; he was put on notice that the hearing and charges were related to his school's probationary status as well as his performance as principal. This notice permitted him to prepare a defense as to the allegations against him surrounding Marshall's probationary status which he did in fact do in writing and orally.

As to the substance of the hearing the transcript reveals that plaintiff did in fact have an opportunity to present his side of the story. Plaintiff and his attorney attended the hearing and heard the oral testimony of 44 witnesses, including Marshall students, staff, members of the Marshall LSC, and members of the Interim Probation Team, and the Regional Education Officer. Plaintiff heard the testimony of the numerous witnesses alleging that he was inadequately performing his duties as principal. Both plaintiff and his attorney gave oral testimony as to why Plaintiff was performing his duties and why Marshall should not be declared in educational crises. Plaintiff's allegations that the hearing was a sham and the hearing officer not an impartial decision maker fails to raise a genuine issue of fact. Those serving as adjudicators are presumed to act in good faith, honestly, and with integrity. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct.

19

1456, 43 L. Ed. 2d 712 (1975). To overcome this presumption, a plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff or actual prejudice to the plaintiff's case. *Id.* Plaintiff contends that because defendants paid Hearing Officer Bates fees to conduct the crisis hearing he was not impartial. This allegation is insufficient as a matter of law to overcome the presumption that Bates was impartial and acted in good faith. A review of the transcript reveals a comprehensive hearing as to the problems at Marshall and the evidence is substantial to support Hearing Officer Bates' conclusion that the school be declared in educational crisis. The hearing also developed substantial evidence as to plaintiff's failure to implement many of the necessary policies required to run Marshall and his failure to work with the interim probation team. As such, plaintiff has failed to overcome the presumption of good faith that is afforded adjudicators.

As to plaintiff's individual capacity claim against Vallas it is undisputed that Vallas was acting within the scope of his authority as CEO when he reassigned plaintiff. The Chief Executive Officer of the Board is required by statute to evaluate each principal's performance. 105 ILCS 5/34-3.3, 34-8.3 and 34-2.3(2) (1996). Under the defense of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have know." *Harlow v. Fitzgerald,* 457 U.S.800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if

constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law. *Rakovich v. Wade,* 850 F. 2d 1180, 1209 (7th Cir. 1988). "It is the plaintiff who bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Id.* The plaintiff "does not meet this burden by alleging the violation of broad constitutional rights, such as the right to due process of the right to be free from unreasonable seizures, and then claiming that such rights are 'clearly established." *Supreme Video,* 808 F. Supp. at 1388. "Rather, 'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 1388-89 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed 2d 523 (1987). Here, when Vallas reassigned plaintiff he was acting within his authority as CEO of the schools. In addition, it is undisputed that Vallas had serious concerns as to the educational status of Marshall. In light of the problems at Marshall it was reasonable of Vallas to believe that he had a right to temporarily reassign plaintiff out of Marshall to the Central Administration Office. It is also undisputed that plaintiff's removal as principal was not caused by Vallas' unilateral action but as a result of the investigation of Marshall. Which we have found above did not violate plaintiff's constitutional due process rights.

Plaintiff's final argument puts forth that he was entitled to notice and a hearing officer consistent with the Illinois Administrative Procedure Act, 5 ILCS 100/1-1 et seq. However, the Act is not applicable to the Board because the Board is a school district not an agency as defined by the Act. 5ILCS 100/1-20. (defining agency as "each administrative unit or corporate

outgrowth of the State government that is created pursuant to statute, other than units of local government and their officers, school districts, and boards of election commissioners.")

Therefore, summary judgment is granted in favor of the Board and Vallas as to Count V.

## B. BREACH OF CONTRACT

In Count I, plaintiff alleges that his removal as principal of Marshall High School violated section V of his Uniform Principal Contract. Section V of the Uniform Principal Contract provides that a principal's contract may be terminated for any one of the following reasons or by any one of the following methods:

> (a) written agreement of the Local School Council, Board of Education and the Principal;
> (b) discharge of the Principal for cause pursuant to Ill. Rev. Stat. Ch. 122, Sec. 34-85;
> (c) closure of the attendance center;
> (d) death, resignation, or retirement, of the Principal;
> (e) misrepresentation referred to in section IX of this agreement.

It is undisputed that plaintiff was removed from his position as principal of Marshall. As noted above the contract provides only five grounds for termination and removal of the principal pursuant to 105 ILCS 5/34-8.3(d) is not one of them. As the Seventh Circuit recently stated in *Head v. Chicago School Reform Board,* 99-3408 (August 25, 2000) *15-16, –F.3d. –(7th Cir. 2000). "Whether by mistake or design, Head's contract grants him greater rights than the Illinois School Code appears to grant him. The Board was obligated to honor those contractual rights by satisfying one of the five contractual grounds for termination of the contract." *Id.* The defendants have set forth a number of facts as to why plaintiff breached his contract, i.e. failure to work with the interim probation team, disregard of Vallas orders, failure to ever report to the Central Office, etc. but they have never fully developed the legal argument explaining why this

22

conduct constitutes cause for purposes of plaintiffs' permanent removal pursuant to the terms of the contract. In light of the Seventh Circuit's recent ruling plaintiff's breach of contract claim survives summary judgment. Because all federal claims have been dismissed, this court relinquishes jurisdiction over plaintiff's pendant breach of contract claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966). Plaintiff is free to pursue this claim in state court.

## CONCLUSION

For the reasons set forth above defendants' motions for summary judgment are granted in part and denied in part (## 169-1, 170-1, 171-1) and plaintiff's motion for summary judgment is denied (#175-1). The parties motions to strike are denied in part and granted in part (## 178-1, 179-1 and 180-1).

**SO ORDERED**                                    ENTERED: 9/13/00

_____
**HON. RONALD A. GUZMAN**
**United States Judge**